OPINION *Page 2 
{¶ 1} Plaintiff-appellant Monica Weisgarber, nka Carman ("Mother"), appeals the February 22, 2008 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, modifying custody of the parties' minor children in favor of Defendant-appellee Christopher Weisgarber ("Father").
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on December 18, 1993, and divorced on June 10, 2004 by Agreed Judgment Entry. At the time of the divorce, the parties had three minor children: Alexis, born June 14, 1994; Peyton, born May 8, 1998; and Caden, born August 17, 2001. The Agreed Judgment granted custody of the three minor children born during the marriage to Mother. Father was granted visitation pursuant to Stark County Family Court Schedule Exhibit "A" companionship schedule. Subsequent to the divorce proceedings, a fourth child was born to the parties: Zoe, born June 16, 2005.
 {¶ 3} On May 17, 2005, Mother filed a motion to terminate companionship or for supervised visitation, alleging Father did not have a permanent residence, the visitation frightened the children and Father exposed the children to abuse from their paternal uncle.
 {¶ 4} On June 15, 2005, the trial court appointed Attorney John Frank as guardian ad litem for the children.
 {¶ 5} On September 21, 2005, Father orally moved the trial court for custody of the children. On January 26, 2006, Father filed a written motion with the trial court seeking custody of the children. Father did not serve Mother with a copy of the motion. *Page 3 
 {¶ 6} On January 27, 2006, Mother withdrew her motion to limit and/or terminate visitation. Also on January 27, 2006, the trial court conducted a one day hearing on Father's motion for custody. As a result of the hearing, the trial court issued "interim orders" granting temporary custody of Peyton and Caden to Father, and ordering Mother have supervised visitation for two hours once a week. Mother retained custody of Alexis and Zoe.
 {¶ 7} On January 22, 2007, Mother filed a motion to return custody of the minor boy children to her, and for an order seeking shared parenting.
 {¶ 8} On June 14, 2007, the trial court conducted an evidentiary hearing on the motions. The trial court also conducted an in camera interview with the minor children.
 {¶ 9} On July 17, 2007, the magistrate issued a decision awarding custody of Peyton and Caden to Father. The magistrate revised the visitation schedule such that the four children spent weekends in the same household. Mother filed objections to the magistrate's decision.
 {¶ 10} On October 11, 2007, the trial court remanded the issue to the magistrate subsequent to a contempt charge against Mother being dismissed.
 {¶ 11} On December 6, 2007, Mother filed motions seeking to have the guardian ad litem removed, and for a psychiatric parent evaluation performed by Dr. Stephen Neuhaus. Father subsequently moved the court to allow him the tax exemptions for Peyton and Caden.
 {¶ 12} On December 18, 2007, the magistrate denied Mother's motion to have an evaluation performed by Dr. Neuhaus, but appointed Dr. Robin Tener to perform a *Page 4 
parenting evaluation. The magistrate further granted Father's motion relative to the allocation of the tax exemptions.
 {¶ 13} Via Judgment Entry of February 22, 2008, the trial court issued an order adopting and approving the magistrate's decisions of July 17, 2007 and December 18, 2007.
 {¶ 14} Mother now appeals, assigning as error:
 {¶ 15} "I. THE COURT ERRED WHEN IT AWARDED TEMPORARY CUSTODY OF THE MINOR CHILDREN TO THE FATHER ON JANUARY 27, 2006 AS THE COURT LACKED JURISDICTION OVER THE ISSUE, AS THE MOTHER WAS NEVER APPROPRIATELY SERVED WITH THE FATHER'S POST DECREE MOTION FOR MODIFICATION OF CUSTODY.
 {¶ 16} "II. THE COURT ERRED WHEN IT AWARDED TEMPORARY CUSTODY OF THE MINOR BOYS TO THE FATHER ON JANUARY 27, 2006 WITHOUT FINDING A CHANGE OF CIRCUMSTANCES AND WHEN IT DID NOT REQUIRE THAT DR. MILLSAPS-LINGER BE AVAILABLE FOR CROSS EXAMINATION.
 {¶ 17} "III. THE COURT ERRED WHEN IT MADE A FINDING OF A CHANGE OF CIRCUMSTANCES IN JULY 2007 BASED IN LARGE PART UPON THE TESTIMONY OF DR. MILLSAPS-LINGER WITHOUT REQUIRING THAT SHE TESTIFY OR BE AVAILABLE FOR CROSS EXAMINATION.
 {¶ 18} "IV. THE COURT ERRED WHEN IT REFUSED TO CONDUCT A HEARING ON WHETHER TO REMOVE THE GUARDIAN AD LITEM. *Page 5 
 {¶ 19} "V. THE COURT ERRED WHEN IT IMPROPERLY DELEGATED THE AUTHORITY TO DECIDE WHETHER A MOTION WAS APPROPRIATE TO THE GUARDIAN AD LITEM.
 {¶ 20} "VI. THE COURT ERRED WHEN IT FAILED TO CONDUCT A HEARING PRIOR TO DECIDING HOW TO ALLOCATE THE TAX EXEMPTIONS OF THE MINOR BOYS."
 I. {¶ 21} Mother's first assignment of error argues the trial court erred in awarding temporary custody of the minor children to Father pursuant to interim orders on January 27, 2006, as Mother had not been served with Father's motion for modification of custody.
 {¶ 22} The January 27, 2006 hearing before the magistrate was a partial hearing which resulted in an interim [temporary] order granting custody to Father with visitation awarded to Mother pending a full evidentiary hearing. On June 14, 2007, the magistrate conducted a full evidentiary hearing relative to the modification of custody and entered a decision via entry of July 17, 2007. Accordingly, any error in failing to serve Father's motion prior to issuance of the interim orders was cured by the subsequent full hearing on the motions.
 {¶ 23} The first assignment of error is overruled.
 II. {¶ 24} In the second assignment of error, Mother asserts the trial court erred in awarding custody of Peyton and Caden to Father on January 27, 2006, without finding a *Page 6 
change of circumstances and in not requiring Dr. Millsaps-Linger to be available for cross-examination.
 {¶ 25} Specifically, Wife maintains the January 27, 2006 magistrate's decision does not make a finding of a change of circumstances, and the trial court violated her right to due process in not conducting a full hearing on the issue of custody.
 {¶ 26} As set forth in our disposition of the first assignment of error, the trial court's subsequent full evidentiary hearing on the issue of custody and the resulting July 17, 2007 Judgment Entry cured any alleged error. Mother could have subpoenaed Dr. Milsaps-Linger to testify at the latter hearing had she chosen to do so.
 {¶ 27} Therefore, the second assignment of error is overruled.
 III. {¶ 28} In the third assignment of error, Mother maintains the trial court erred in finding a change of circumstances in July 17, 2007.
 {¶ 29} Specifically, Mother notes the trial court's reliance on the report of Dr. Millsaps-Linger, without requiring she testify or be made available for cross-examination.
 {¶ 30} The following exchange occurred at the January 27, 2006 hearing during the testimony of the guardian ad litem, Attorney John Frank:
 {¶ 31} "Q. Thank you. And going back to the request for the change of custody that was made verbally at the October hearing for the pretrial, you requested that no action be taken on that?
 {¶ 32} "A. Simply because I wanted Dr. Milsaps-Linger to be able to finish her assessment. *Page 7 
 {¶ 33} "Q. And based on her assessment, have you spoken to her since she made her assessment?
 {¶ 34} "A. I spoke with her on Friday, last Friday, in the afternoon at about 4:40. She has subsequently issued and actually it was faxed to me by family liaison specialist Rosemary Diamond. Patty Milsaps-Linger's report was faxed to me by Rosemary Diamond yesterday and then several hours after Rosemary faxed it to me, I got a copy of it from Dr. Milsaps-Linger's office as well.
 {¶ 35} "Q. And so do you have her report in front of you now.
 {¶ 36} "A. I do.
 {¶ 37} "Q. Okay. I will just be referencing it as Dr. Patricia Milsaps-Linger's report so that it's not put into the record except under seal. Can you tell me what you gleaned from her report.
 {¶ 38} "A. A number of things, first of all, she feels that there is definitely parental alienation, I believe, if I can remember, the text of her letter, I believe that she said that seven of the eight identifying factors of PAS or parental alienation syndrome were present in Alexis, that's the oldest child. With respect to Peyton and Caden, she expressed concern that although they did not appear to be alienated at this time, if they continue to live in that environment in order to survive, I think were her words, they would be encouraged to join the campaign of dad's a bad guy, I think that that was the language that Dr. Milsaps-Linger used. She also expressed concern about the counseling situation with the children. The children have been counseling with Patty Burdeshaw with Sandy Lombardi's group, I believe that's Psych and Family and her concern was that Miss Burdeshaw had had very little interaction with Chris and really *Page 8 
when there are problems in a family, really everybody needs to be involved with the counselor, the children, the mom, the dad, so that was a concern of hers as well. She also indicated a concern about Monica's willingness to reform and to recognize that she can't alienate the children against their father. She felt that because Monica should have been or must have been aware that individuals were assessing this and it still appeared to continue, she felt that the prognosis for Monica's redemption or recovery from parental alienation syndrome, I believe to use her word, was poor.
 {¶ 39} "Q. So is that basically that Monica knows that there are people watching her, professionals watching her and she has not changed her conduct?
 {¶ 40} "A. That was my interpretation, yes, of her report.
 {¶ 41} "Q. And you have found that true in your reports also?
 {¶ 42} "A. I have verbally spoken with Monica about my concerns and certainly I documented them in my Guardian ad Litem Reports which I know Attorney Smith provided to her so I'm sure she was aware of my feelings."
 {¶ 43} Tr. at 162-163.
 {¶ 44} Mother did not object to the testimony of Attorney Frank or to the introduction of the report of Dr. Millsaps-Linger. Therefore, any alleged error is waived.
 {¶ 45} In the July 17, 2007 magistrate's decision, the magistrate finds Mother engaged in a pattern of parental alienation. While noting the letter of Dr. Millsaps-Linger, the magistrate also cites the numerous guardian ad litem reports and Mother's actions in the past as demonstrative examples of her attempt to alienate the children from Father. The trial court cites Mother's attempt to terminate Father's visitation, her animosity towards Father resulting in alienation of Alexis from her father, and Mother's *Page 9 
subsequent remarriage and move as a change of circumstances sufficient to modify the custody determination.
 {¶ 46} In evaluating the best interests of the children, the magistrate cites Mother's denial of visitation with Father, citing health reasons or her interpretation of a written schedule. Further, the court cited her rigidity and refusal to make changes.
 {¶ 47} Based upon the above, we conclude the trial court did not err in finding a change of circumstances justifying the modification of custody.
 {¶ 48} The third assignment of error is overruled.
 IV, VI. {¶ 49} The fourth and sixth assignment of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 50} Mother maintains the trial court erred in failing to conduct a hearing relative to Mother's motion to remove the appointed guardian ad litem and in the decision relative to the tax exemptions.
 {¶ 51} Specifically, Mother cites her December 6, 2007 motion requesting the guardian ad litem be removed for bias and prejudice affecting the best interests of the children.
 {¶ 52} Upon review, Wife has not offered any statutory or legal precedent requiring the trial court to conduct a hearing relative to such motions. Rather, Ohio Civil Rule 7(B)(2) authorizes the trial court to hear motions without an oral hearing upon brief written statements or reasons in support and opposition. Accordingly, we do not find the trial court abused its discretion in denying Mother's motion to remove the guardian ad litem without conducting an evidentiary hearing. *Page 10 
 {¶ 53} As to the tax exemption issue, the trial court modified the July 17, 2008 magistrate's decision, finding the magistrate failed to properly address the issue. The trial court evaluated the factors to be considered relative to the allocation of the tax exemption. The trial court found the net tax savings, relative financial circumstances of the parties, needs of the children and the eligibility of both parties to earn income tax credit were best met by allocating the tax exemption to Father. Upon review, we find the trial court did not abuse its discretion in rendering its decision.
 {¶ 54} The fourth and sixth assignments of error are overruled.
 V. {¶ 55} In the fifth assignment of error, Mother asserts the trial court erred in improperly delegating authority to the guardian ad litem to review and authorize the filing of motions with the trial court.
 {¶ 56} Mother cites the July 17, 2008 magistrate's decision, subsequently approved and adopted by the trial court:
 {¶ 57} "10. Prior to either party filing any action in Stark County Family Court, other than contempt, they shall contact Atty John R. Frank with their concern. If he deems it appropriate he may file a motion for review."
 {¶ 58} Ohio Revised Code Section 2323.52 provides:
 {¶ 59} "(A) As used in this section:
 {¶ 60} "* * *
 {¶ 61} "(3) "Vexatious litigator" means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of *Page 11 
common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. "Vexatious litigator" does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio unless that person is representing or has represented self pro se in the civil action or actions.
 {¶ 62} "(B) A person, the office of the attorney general, or a prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a municipal corporation who has defended against habitual and persistent vexatious conduct in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court may commence a civil action in a court of common pleas with jurisdiction over the person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator. The person, office of the attorney general, prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a municipal corporation may commence this civil action while the civil action or actions in which the habitual and persistent vexatious conduct occurred are still pending or within one year after the termination of the civil action or actions in which the habitual and persistent vexatious conduct occurred.
 {¶ 63} "(C) A civil action to have a person declared a vexatious litigator shall proceed as any other civil action, and the Ohio Rules of Civil Procedure apply to the action.
 {¶ 64} "(D)(1) If the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas *Page 12 
may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed: * * *
 {¶ 65} "* * *
 {¶ 66} "(F)(1) A court of common pleas that entered an order under division (D)(1) of this section shall not grant a person found to be a vexatious litigator leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court unless the court of common pleas that entered that order is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application. * * *"
 {¶ 67} The trial court may not delegate judicial authority to another entity absent the color of authority. Hoffman v. Hoffman, 2002-Ohio-6031. The trial court required both parties to apply to the guardian ad litem to file a motion with the trial court, without a specific finding either party is a vexatious litigator. We hold in the absence of such determination, the trial court is without authority to delegate the review of motions to the guardian ad litem requiring his approval before filing.
 {¶ 68} The fifth assignment of error is sustained. *Page 13 
 {¶ 69} The February 22, 2008 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part.
 Hoffman, P.J., Farmer, J. and Edwards, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part. Costs assessed to Appellant. *Page 1