[Cite as *Turner v. Turner*, 2012-Ohio-2050.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MICA TURNER, nka SKATULA, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| V. | ) | CASE NO. 11-JE-5 |
| | ) | |
| TIMOTHY T. TURNER, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:         Civil Appeal from Court of Common
                                  Pleas, Domestic Relations Division of
                                  Jefferson County, Ohio
                                  Case No. 04DR19

JUDGMENT:                         Affirmed

APPEARANCES:
For Plaintiff-Appellant           Atty. Francesca T. Carinci
                                  Suite 904-911, Sinclair Building
                                  100 North Fourth Street
                                  Steubenville, Ohio 43952

For Defendant-Appellee            Atty. Peter S. Olivito
                                  606-612 Sinclair Building
                                  Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: May 1, 2012

DONOFRIO, J.

{¶1}    Appellant, Mica Turner n.k.a. Skatula, appeals from a Jefferson County Common Pleas Court judgment reallocating parental rights and responsibilities to name appellee, Timothy Turner, as the residential parent of the parties' children.

{¶2}    After having been married since December 15, 1998, the parties filed a separation agreement and a petition for dissolution on January 23, 2004.  The trial court granted the parties a dissolution on March 8, 2004.  Per the terms of the separation agreement, appellant was named the residential parent of the parties' two children:  Kirsten, d.o.b. July 2, 1997; and Kody, d.o.b. June 28, 2000.  Appellee was afforded visitation in accordance with the child visitation guidelines.

{¶3}    On July 16, 2010, appellee filed a motion for reallocation of parental rights and responsibilities asking the court to name him as the children's residential parent.  He alleged a substantial change in circumstances for many reasons including no phone by which he could communicate with appellant, unacceptable living accommodations for the children, behavioral problems, and the failure on appellant's part to provide appellee with school information.

{¶4}    The motion proceeded to a hearing before a magistrate.  Both parties testified along with several other witnesses.  The magistrate found that appellee's motion should be granted and appellee should be named the residential parent. Appellant filed numerous objections to the magistrate's decision.

{¶5}    The trial court held a hearing on appellant's objections.  It overruled the objections and entered a judgment consistent with the magistrate's decision reallocating parental rights and responsibilities to name appellee as the residential parent.

{¶6}    Appellant filed a timely notice of appeal on March 17, 2011.

{¶7}    Appellant raises five assignments of error, the first of which states:

> THE MAGISTRATE ABUSED HER DISCRETION
> BY REFUSING TO ADMIT EVIDENCE OF AN EXCITED
> UTTERANCE EVEN THOUGH IT WAS THOROUGHLY
> PRESENTED TO THE COURT IN ACCORDANCE WITH

OHIO RULE OF EVIDENCE 803(2).

**{¶8}** Appellant contends that the magistrate erred in failing to allow her to present testimony by Brenda Casey as to statements made by Kirsten, which she asserts qualified as an excited utterance. Appellant asserts that the custody case was a startling event that triggered the excited utterance.

**{¶9}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mauldin*, 7th Dist. No. 08-MA-92, 2010-Ohio-4192; *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (1996). An abuse of discretion is more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶10}** Hearsay is an out-of-court statement, offered in court, to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is inadmissible. Evid.R. 802. However, there are numerous exceptions to the hearsay rule.

**{¶11}** One of those exceptions is for "excited utterances." An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). In order for an excited utterance to be admissible, four requirements must be met: (1) there must be a startling event that produces nervous excitement in the declarant so that his statement is spontaneous and non-reflective; (2) the declarant must make the statement while he or she is still under the stress of the excitement; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. *State v. Taylor*, 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316 (1993), citing *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus.

**{¶12}** To determine whether the trial court erred in disallowing Casey's testimony regarding Kirsten's statements, we must examine the testimony that the court excluded in light of the above requirements.

**{¶13}** Brenda Casey is Kirsten's and Kody's dance teacher. She testified that Kirsten confides in her during dance lessons. (Tr. 304-305). In trying to develop the excited utterance exception, the following exchange took place between appellant's counsel and Casey:

Q Okay. * * * [D]escribe her [Kirsten's] state that you observed [at dance class].

A She's depressed and she's crying and she's emotional and she's more emotional even with my daughter in the warm-up."

Q Have you seen that?

A Just heart-broken over what's going on.

Q Have you seen her?

A Yes.

Q And tell me about what she looks like when she walks in.

A She's very depressed. Her – she's down. She – she's not happy.

Q Okay. You said she was crying?

A Oh, yes.

Q * * * [W]hen did she start to cry?

A Well, when she starts talking about it.

Q Okay.

A And then I always give her a hug and tell her everything will be all right, what's meant to be will be.

Q And did she state anything to you? Did you ask her why she's crying?

A Yes and she explained the whole thing to me and she wants to live with her –

[At this point, the court sustained appellee's objection.]

Q Did she say why she was upset?

A  She's upset because of the whole situation now, the fact that Tim is trying to take the children.

Q  Okay.

A  She wants to live where she is.  (Tr. 310-11).

**{¶14}** The court once again sustained appellee's objection and stated that it would disregard Casey's statement.  (Tr. 311).

**{¶15}** The trial court did not abuse its discretion in disallowing Casey's testimony regarding Kirsten's statements to her.

**{¶16}** According to appellant, the custody case was the startling event that triggered Kirsten's alleged excited utterance.  Appellee filed his motion for a change in custody on July 6, 2011.  There was no testimony as to when Kirsten became aware of the motion.  There was also no testimony as to when she spoke to Casey about the motion. Thus, appellant failed to establish that filing of the custody case was a startling event that produced nervous excitement in Kirsten so that her statement was spontaneous and non-reflective.

**{¶17}** Instead, Casey's testimony indicated that since the filing of the motion, Kirsten had been depressed and sad over the whole situation.  Certainly if that was the case, Kirsten would have had time to reflect on her statement that she wanted to remain living with appellant.  The elements of an excited utterance exception simply were not met here.

**{¶18}** Accordingly, appellant's first assignment of error is without merit.

**{¶19}** We will address appellant's remaining assignments of error out of order for ease of discussion.

**{¶20}** Appellant's third and fifth assignments of error deal with finding a change in circumstances.  Appellant's third assignment of error states:

THE MAGISTRATE DID NOT ESTABLISH THAT A CHANGE IN CIRCUMSTANCES HAD OCCURRED.

**{¶21}** Appellant's fifth assignment of error states:

THE MAGISTRATE ABUSED HER DISCRETION BY USING IN

HER DECISION AS A BASIS FOR A CHANGE IN CIRCUMSTANCES THAT THE APPELLANT CONTINUES TO SMOKE.

**{¶22}** R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus; *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603, 737 N.E.2d 551 (2000). A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996). This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

**{¶23}** R.C. 3109.04(E)(1)(a) provides:

(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* *

* *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the

child.

**{¶24}** Per R.C. 3109.04, before the court may consider the best interests of the children, it must first find a change of circumstances. Appellant raises two arguments regarding the change in circumstances.

**{¶25}** Appellant first argues that the children had not been integrated into appellee's family and the harm that will be caused by changing their residence cannot be outweighed by any advantages of the change of residence. She asserts that the record is filled with examples of how much the children love living with her and their maternal grandparents. Specifically she pointed to Kirsten's testimony about how much she loved living on a farm and taking care of her horse.

**{¶26}** Several factors, when taken together, establish the required change in circumstances.

**{¶27}** Remarriage can be a factor that contributes to a change in circumstances. *Wilson v. Wilson*, 4th Dist. No. 09CA1, 2009-Ohio-4978, ¶ 26; *Weisgarber v. Weisgarber*, 5th Dist. No.2008CA0067, 2009-Ohio-20, ¶ 45; *Bracy v. Bracy*, 3d Dist. No. 1-08-15, 2008-Ohio-3888, ¶ 15. Both appellant and appellee have remarried since the dissolution.

**{¶28}** Appellant's recent health issues also contribute to a change in circumstances. Nancy testified regarding appellant's health problems that had developed over the past year and a half. (Tr. 261-62). She stated that appellant suffers from acid reflux resulting in ulcers, breathing problems, back problems, and an ankle injury from a horse stepping on her ankle. (Tr. 264-65). Appellant testified that due to her back pain, she can no longer work. (Tr. 332). She said that she applied for disability but that her application was still pending. (Tr. 358-59).

**{¶29}** Moreover, the evidence demonstrated that while the children are in appellant's care, it is not appellant, but instead the maternal grandmother who is their primary caretaker. At best, the children spend half of their time at appellant's home. And much of the testimony indicated that they spend significantly more time in their grandparents' home and care than in their mother's home and care. And while the

grandparents have always played a large role in the children's lives, the testimony indicated that since the parties' dissolution, the grandma has taken over for appellant as the residential "parent."

**{¶30}** By appellee's own admission, the maternal grandparents, Pete and Nancy Kale, have always had active roles in the children's lives. (Tr. 66). During the parties' marriage, they lived on the Kales' farm property. (Tr. 66). And now, appellant lives on the Kales' property in a trailer with her new husband. The Kales live in a house on the property.

**{¶31}** But since the parties' dissolution, the Kales have become the children's primary caretakers.

**{¶32}** Kirsten testified that Kody spends most of his time at the Kales' house. (Tr. 205). She said that Kody "comes over to [appellant's] house" to stay about three times a week. (Tr. 205). Kirsten and Nancy both testified that Nancy was the one who helps Kody with his homework. (Tr. 205, 247). Kirsten testified that she often spends the night at her grandparents' house. (Tr. 212-13). She stated that she likes to spend time with her grandma. (Tr. 213). Nancy buys her shoes and clothes, takes her to get her hair cut, and buys her ice cream. (Tr. 213). Kirsten further testified that when she and Kody sleep at the Kales' house, they sleep in bed with their grandparents. (Tr. 221). And when appellee wants to call the children, he calls the Kales' house. (Tr. 8).

**{¶33}** Nancy testified that she pays for Kody's tutoring. (Tr. 247). And she stated that she goes to the children's school to discuss their progress. (Tr. 248). Additionally, she stated that she is the one who takes the children to their soccer games. (Tr. 250-60). And the children's dance instructor testified that Nancy, not appellant, brings the children to dance lessons and pays for the lessons. (Tr. 302). Moreover, Nancy is the one who discusses issues about the children with appellee and writes notes to appellee about the children. (Tr. 260, 368).

**{¶34}** Furthermore, during their testimony both Nancy and appellant referred to "we" when making decisions regarding the children. It was as if Nancy and

appellant were the parents making decisions for the children. (See for example Tr. 273, 281, 371, 373).

**{¶35}** There was also an incident involving one of Kirsten's dance recitals that the parties spent a great deal of time discussing. Kirsten was involved in a dance number called "Daddy's Little Girl." (Tr. 216). During the number, the girls all danced with their fathers. Kirsten, however, danced with a stand-in. (Tr. 37). Appellee attended Kirsten's recital and watched the dance. (Tr. 37). The recital was the first time he learned of the dance. (Tr. 37). Kirsten and Nancy both testified that the reason for this was because Nancy paid for the lessons and she did not want appellee to participate since he did not help to pay for the lessons. (Tr. 217, 272). Kirsten testified that if it had been up to her, she would have had appellee dance with her. (Tr. 217).

**{¶36}** The parties also testified regarding the past winter. Apparently, appellant and her husband could not afford to pay for heat in their trailer so they went to live with a friend for the winter. (Tr. 350). The children, however, did not go with appellant but instead stayed with their grandparents. (Tr. 193-94).

**{¶37}** In taking all of these factors together, the parties' remarriages, appellant's health changes, and significantly, the grandparents usurping of care of the children, the court had enough evidence to find a change in circumstances.

**{¶38}** Second, appellant contends that her smoking was not a change in circumstances because the testimony indicated that she smoked before, during, and after the marriage.

**{¶39}** There is no indication in the magistrate's findings of fact that she relied on appellant's smoking in finding a change in circumstances. The magistrate did reference appellant's smoking. In fact, the magistrate noted appellant's testimony that she had smoked since she was 12 years old. Thus, the magistrate was well aware that appellant's smoking was not a new circumstance.

**{¶40}** Accordingly, appellant's third and fifth assignments of error are without merit.

**{¶41}** Appellant's second and "3A" assignments of error deal with the best interest factors.  Appellant's second assignment of error states:

> THE MAGISTRATE DID NOT TAKE INTO CONSIDERATION THE WISHES OF THE CHILDREN AS REQUIRED BY OHIO REVISED CODE 3109.04.

**{¶42}** Appellant also lists what she terms "assignment of error 3A." It states:

> THE MAGISTRATE FAILED TO TAKE INTO CONSIDERATION, ALONG WITH THE WISHES OF THE CHILDREN, THE CHILDREN'S INTERACTION WITH THEIR HALF-SIBLING AND THEIR RELUCTANCE TO BE SEPARATED FROM HIM.

**{¶43}** Once a court finds that a change in circumstances has occurred, it must move on to consider whether a modification is in the children's best interest.  In determining the children's best interests, the court shall consider all relevant factors, including, but not limited to:

> The wishes of the child's parents regarding the child's care;
>
> If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> The child's adjustment to the child's home, school, and community;
>
> The mental and physical health of all persons involved in the situation;
>
> The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child [or certain other offenses involving children or domestic violence];

Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

Whether either parent has established a residence, or is planning to establish a residence, outside this state. R.C. 3109.04(F)(1).

{¶44} Appellant argues here that the court failed to consider the children's wishes to remain with her on the farm.

{¶45} The magistrate interviewed both children in chambers and found:

Upon the request of Respondent, Mica Skatula, the Court interviewed the minor children, Kody and Kirsten, in chambers. The children possess sufficient reasoning ability to express his [sic.] wishes and concerns with respect to the allocation of parental rights and responsibilities. It is in the children's best interest to determine his [sic.] wishes and concerns as related to parenting time. The children are accustomed to and enjoy their lifestyle on the farm, and are fearful that they cannot pursue their interests in the residence of the Petitioner, Timothy Turner. The children have a strong bond with their grandparents rather than

Respondent, Mica Skatula, and are apprehensive of a change in this relationship if Petitioner, Timothy Turner is named the residential parent. The children do not appreciate the roles of their parents, and are accustomed to the maternal grandparents providing for their needs while in the care of Respondent.

{¶46} Hence, contrary to appellant's contention, the magistrate and the court did consider the children's wishes in rendering a decision.

{¶47} Appellant also argues that the magistrate failed to consider the children's relationship with their half-brother, who lives with appellant and her current husband. She points to Kirsten's testimony that she did not want to be separated from her half-brother.

{¶48} The magistrate took considerable time explaining her finding regarding the children's relationship with their half-brother, Kasey:

Respondent, Mica Skatula, has another child born to another parent prior to her relationship with her spouse. The minor children have a close relationship with their half-brother, who is a toddler. The children who are the subject of this order are in different stages of development than their half-brother. The children do not reside with Respondent on a regular basis, and therefore do not reside with their half-brother on a regular basis. School and extracurricular activities of the children create substantial periods of separation for the children. The children are already on a midweek parenting time and weekend rotation which cause separation between them and their half-brother. During the holidays and summer months, the children are separated. When the Respondent moved out of the trailer for those winter months, she separated the children. Her son, Kasey, stayed with her, and the minor children continued to reside with the maternal grandparents. The proposed change in

designation affects the daily contact on three days of the week.

**{¶49}** Thus, contrary to appellant's assertion, the magistrate gave a great deal of consideration to the children's relationship with their half-brother.

**{¶50}** Accordingly, appellant's second and 3A assignments of error are without merit.

**{¶51}** Appellant's fourth assignment of error states:

THE MAGISTRATE ABUSED HER DISCRETION BY COMMENTING ON THE APPELLANT'S WEIGHT, WHICH WAS NEVER MENTIONED ANYWHERE IN THE RECORD.

**{¶52}** Here appellant asserts that the magistrate should not have commented on her weight because there was no evidence that her weight had any bearing on her ability to parent the children.

**{¶53}** While it is true that there was no evidence that appellant's weight had any bearing on her ability to parent the children, appellant's physical health was a factor the magistrate and the court were to consider in determining the children's best interests. See R.C. 3109.04(F)(1)(e). The magistrate discussed appellant's health in her findings of fact. She noted that appellant has applied for disability due to back pain but that there was insufficient evidence as to her medical condition. The magistrate further noted that appellant has a history of an ankle injury, ovarian cysts, and acid reflux due to ulcers. The magistrate then stated: "She appears to be overweight." The magistrate also noted that appellant is a smoker.

**{¶54}** Given that the magistrate's comment on appellant's weight was just one short sentence included in a discussion of appellant's overall health, it was not an abuse of discretion for the magistrate to make this observation. It is a known fact that weight affects a person's health. And given appellant's other health issues, it was not unreasonable for the magistrate to include appellant's weight in a discussion of her health.

**{¶55}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶56}** For the reasons stated above, the trial court's judgment is hereby

affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.